SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Thomasenia L. Fowler v. Akzo Nobel Chemicals, Inc.** (A-5-21) (085939)

**Argued January 19, 2022 -- Decided June 30, 2022**

**ALBIN, J., writing for the Court.**

In this appeal, the Court considers whether a manufacturer or supplier that puts inadequate warnings on its asbestos products used in the workplace can fulfill its duty to warn by disseminating adequate information to the employer with the intention that such information will reach the workers using those products. The Court also considers whether, in charging on medical causation in this mesothelioma case, the trial court was required to give the frequency, regularity, and proximity language in Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 28-29 (App. Div. 1989), rather than the substantial factor test in the Model Civil Charge, as modified by the court.

In June 2011, Thomasenia Fowler -- as administrator of her husband Willis Edenfield's estate -- initiated a wrongful death/product liability action against Union Carbide, a manufacturer and supplier of asbestos that Edenfield handled as a daily part of his 40-year job at an adhesive manufacturing plant (the Bloomfield Plant).

In 1968, Union Carbide began placing a warning on its asbestos bags. In compliance with an emergency standard imposed by the Occupational Safety and Health Administration, the company changed the warning in 1972 to state: "CAUTION Contains Asbestos Fibers Avoid Creating Dust Breathing Asbestos Dust May Cause Serious Bodily Harm." National government organizations had recommended upgraded warnings, as did an association to which one of the doctors from Union Carbide's medical department belonged. An in-house staff-member of Union Carbide also notified the company that its warning inadequately addressed the lethal dangers of asbestos exposure. Union Carbide declined to upgrade its label.

Union Carbide presented evidence that it periodically provided information and various safety warnings about its asbestos products to Edenfield's employers and requested that the information and warnings be made available to the employees. Over a course of years, Union Carbide forwarded to its "Calidria" customers such items. In its Appellate Division brief, Union Carbide highlighted that the Plant's

1

operators declined its offer "to monitor the Plant's air quality" and "to disseminate the warnings" to employees.

At trial, each side presented differing opinions about the nature of the danger posed by Calidria asbestos and the degree of exposure necessary to cause mesothelioma. Plaintiff's expert testified that the greater the exposure to asbestos, the greater the likelihood of contracting mesothelioma -- but emphasized that even "short exposures to asbestos cause mesothelioma." She concluded that Edenfield's exposure to Union Carbide's asbestos was a substantial factor in his contracting the deadly disease. Union Carbide presented the testimony of three experts who generally agreed that Edenfield's exposure to the asbestos was not of a high enough dose to be a substantial factor.

The trial court instructed the jury. As to the duty to warn, the court made clear that Union Carbide could be held liable either for failing to place adequate warnings on its Calidria asbestos bags or failing to disseminate adequate warnings and information to the Bloomfield Plant intended for its employees. Union Carbide objected to those instructions, arguing that the jury could find that, even if the warnings on the asbestos bags were inadequate, Union Carbide was not liable if it provided the employer warnings and information "with the intention or purpose that the employer alert employees to the dangers of the product and the proper methods of mitigating the" associated risks.

As to medical causation, the court instructed that the jury would have to find that "the failure to warn [was] a substantial factor which singly, or in combination with another cause, brought about the injury." The court stressed that liability should not attach based on casual or minimal contact with the product and should not be imposed on mere guesswork. The trial court rejected Union Carbide's proposed charge on medical causation, which would have required plaintiff to "prove that Mr. Edenfield was exposed to [Union Carbide's] product with sufficient frequency, with a regularity of contact, and with the product in close enough proximity to show that the exposure . . . was a substantial contributing factor to Mr. Edenfield's mesothelioma." (emphasis added).

The jury found for plaintiff, concluding that (1) Union Carbide failed to provide adequate warnings or instructions on its product (the asbestos bags), (2) the failure to do so was a proximate cause of Edenfield's exposure to Union Carbide's asbestos, and (3) that exposure was a substantial factor in causing his mesothelioma. The jury also determined that plaintiff did not prove that Union Carbide failed to take reasonable steps to ensure that the warnings it gave to Edenfield's employers reached Edenfield -- a finding that did not affect the verdict in light of the dual warning instruction.

2

The Appellate Division reversed, finding that, "in appropriate circumstances, the manufacturer may discharge this duty . . . by conveying the warnings to the employer and relying on the employer to convey them to the employee." On the second issue, the Appellate Division asserted that the trial court erred in not charging the jury on the "frequency, regularity, and proximity" test set forth in Sholtis, 238 N.J. Super. at 28-29, and later adopted in James v. Bessemer Processing Co., 155 N.J. 279 (1998). The Court granted certification, 248 N.J. 409 (2021).

**HELD:** As to the duty to warn, an asbestos manufacturer or supplier that places inadequate warnings on asbestos bags used in the workplace has breached its duty to the worker, regardless of whether it provides the employer with the correct information, which is reasonably intended to reach its employees. As to medical causation, the trial court's modified Model Jury Charge on proximate cause sufficiently guided the jury.

1. Under New Jersey common law, a product that is shipped to a workplace without adequate warnings about the product's inherent dangers is a defective product. In this strict-liability failure-to-warn action, plaintiff had to prove that (1) without adequate warnings, use of Union Carbide's asbestos bags by workers, such as Edenfield, was dangerous -- a product defect; (2) Union Carbide forwarded the asbestos bags to the Bloomfield Plant without adequate warnings -- in a defective condition; and (3) the inadequate warnings proximately caused Edenfield to contract mesothelioma. The third factor requires proof of two different forms of causation: product-defect causation and medical causation. For product-defect causation, the plaintiff must show that the defect in the product -- the lack of warnings or adequate warnings -- was a proximate cause of the asbestos-related injury. For medical causation, the plaintiff must show that the injury was proximately caused by exposure to defendant's asbestos product. The first issue in this case is whether the trial court properly charged the jury that if the warnings on the asbestos bags were inadequate, Union Carbide could not escape liability by giving Edenfield's employers proper warnings. (pp. 29-31)

2. New Jersey jurisprudence establishes that an asbestos manufacturer or supplier has a duty to provide adequate warnings to both the employee directly and the employer. The Court stated in Coffman v. Keene Corp., "we reasonably assume that a manufacturer or supplier, consistent with its own duty, will provide an adequate warning of its unsafe product to employers as well as employees," and it repeatedly referred to both employers and employees throughout the opinion. See 133 N.J. 581, 607-09 (1993) (emphasis added). The importance of placing adequate warnings on the product itself, when feasible, is informed by the fact that some employers may not provide critical health warnings and information to their workforce. Dual warnings -- possibly redundant warnings -- are warranted because workers "exposed to a defective product" without adequate warnings are deprived of the ability "to

3

exercise [a] meaningful choice with respect to confronting the risk of injury posed by the product." See id. at 605. In Theer v. Philip Carey Co., the Court stressed "that employers have an independent duty to provide a safe workplace for their employees, and that a manufacturer or supplier of a product intended for use in the workplace is under a concurrent duty to warn employers, as well as employees, concerning . . . safety risks." 133 N.J. 610, 620-21 (1993). (pp. 32-34)

3. In cases involving asbestos products in a workplace setting, the Court has hewed to the concurrent duty to warn where placing a warning on the product itself is feasible. In light of the deadly dangers posed by asbestos in the workplace, Coffman and Theer imposed a special duty on manufacturers and suppliers of asbestos -- the concurrent duty to warn not only the employee but also the employer. This case illustrates the importance of the dual-warning doctrine. Union Carbide was aware that the warnings on its asbestos bags understated the health risks to workers, yet there was no mention in the warnings that inhaling asbestos fibers may cause lung cancer. And not only did Union Carbide provide inadequate label warnings on its products, but as even Union Carbide conceded in its Appellate Division brief, the Bloomfield Plant's operators did not "disseminate the [manufacturer's] warnings or instructions to Plant employees." Common law jurisprudence governed the environmental torts in Coffman and Theer, where inadequate warnings rendered the products defective. The case on which Union Carbide relies as charting a different path -- Grier v. Cochran Western Corp., 308 N.J. Super. 308 (App. Div. 1998) -- is a non-asbestos case that is governed by statute and involves a sophisticated piece of machinery. Different products may require different approaches. Instructive label warnings may be more efficacious and feasible in dealing with certain toxic substances than sophisticated pieces of machinery. Although information disseminated by the employer may always be important, in the case of sophisticated machinery supervisory training may be an especially significant component in reducing safety hazards, as suggested by Grier. The Court does not suggest a one-size-fits-all approach, but, in this asbestos case, it stands by the directives given in Coffman and Theer that the manufacturer had a duty to provide concurrent warnings both to the employee, through product labeling, and to the employer with the intention that the necessary safety information would be disseminated to the workforce. The Court therefore concludes that the trial court properly charged the jury on product defect. (pp. 34-43)

4. The Court next considers whether the trial court correctly charged the jury on medical causation. In this asbestos exposure case, in addition to instructing the jury in accordance with the Model Jury Charge on "substantial factor," the court charged the jury with language adapted to asbestos exposure cases. Union Carbide claims that the trial court strayed from the "frequency, regularity, and proximity test" set forth in Sholtis and adopted in James. However, the Sholtis test is adaptable to varying scenarios and should not be rigidly and inflexibly applied. In James, the

4

Court explained in applying the <u>Sholtis</u> test that plaintiffs seeking to prove causation in toxic-tort litigation face "extraordinary and unique burdens" that are "more subtle and sophisticated than proof [burdens] in cases concerned with more traditional torts." 155 N.J. at 299. Courts have recognized that, in cases involving asbestos-exposure that allegedly caused mesothelioma, the frequency, regularity and proximity test is not a rigid test with an absolute threshold level necessary to support a jury verdict, but rather an articulation of what constitutes a substantial factor for purposes of determining proximate cause in an occupational exposure setting. Thus, when a plaintiff has presented competent and credible evidence that even a minimal number of asbestos fibers can cause mesothelioma, then a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury. (pp. 43-48)

5. Here, plaintiff's expert emphasized that even "short exposures to asbestos cause mesothelioma." In addition, she expressed that Edenfield's exposure to Union Carbide's Calidria asbestos was a daily occupational hazard over many years and "[was] significant enough to substantially contribute to his mesothelioma." In the end, it was for the jury to determine whether to accept that expert opinion or the opposing opinions of the defense experts. The trial court here properly tailored the charge to the evidence because neither plaintiff's nor Union Carbide's experts agreed on the level of exposure to Union Carbide's asbestos necessary to cause Edenfield's mesothelioma. (pp. 48-49)

6. The Court rejects the position that there can be one standard used by the trial court in deciding summary judgment and another standard used in instructing the jury. The substantive law governing the summary judgment motion is the same law that guides the jury in making its ultimate determination. The Court concludes that the trial court correctly charged the jury on the core concepts underlying medical causation in this case, and it refers consideration of whether there is a need to modify the Model Charge on proximate cause and substantial factor in the toxic tort setting to the Supreme Court Committee on Model Civil Jury Charges. (pp. 49-50)

**REVERSED. The jury's verdict is REINSTATED and the matter is remanded to the trial court.**

**JUSTICE SOLOMON** joins the majority opinion on the issue of medical causation, agreeing that a trial court's failure to use the specific language from <u>Sholtis</u> when instructing the jury on medical causation will not always lead to reversal where the trial court adequately explains the standard to the jury. Justice Solomon joins the dissent as to the issue of adequate warnings, writing that, consistent with <u>Coffman</u> and <u>Theer</u>, a manufacturer could discharge its duty to warn by conveying adequate warnings and information to employers for distribution to employees.

5

**JUSTICE PATTERSON, dissenting,** expresses the view that the trial court ran afoul of <u>Coffman</u> and <u>Theer</u> when it charged the jury that Union Carbide could not discharge its duty to warn by conveying adequate warnings and information to the employers for distribution to employees. Justice Patterson adds that the court compounded that error by directing the jury to consider only the warnings on asbestos bags when it answered the sole question on the verdict sheet about the adequacy of Union Carbide's warnings. In Justice Patterson's view, the majority replaces the fair and workable failure-to-warn standard for workplace exposure cases set forth in <u>Coffman</u> and <u>Theer</u> with a confusing and unrealistic test that precludes a finding that the manufacturer has met its duty to warn unless warnings on asbestos bags, if feasible, were adequate. Justice Patterson also finds that the majority's holding on the core question of causation contravenes New Jersey precedent and muddles the law. Justice Patterson explains that the courts in <u>Sholtis</u> and <u>James</u> viewed general causation concepts to be inadequate to guide juries in workplace toxic tort cases and instead expressly required plaintiffs in toxic tort cases to prove an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity to the plaintiff. In Justice Patterson's view, the majority's default to the general proximate cause test, without the <u>Sholtis</u>/<u>James</u> refinement of that standard for toxic tort cases, alters the plaintiff's burden of proof on the question of medical causation.

**CHIEF JUSTICE RABNER and JUSTICE PIERRE-LOUIS join in JUSTICE ALBIN's opinion. JUSTICE SOLOMON joins JUSTICE ALBIN's opinion in part. JUSTICE PATTERSON filed a dissent, which JUSTICE SOLOMON joins in part. JUDGE FUENTES (temporarily assigned) did not participate.**

6

SUPREME COURT OF NEW JERSEY

A-5 September Term 2021

085939

Thomasenia L. Fowler, as Administrator
and Administrator ad Prosequendum of the
Estate of Willis Edenfield,

Plaintiff-Appellant,

v.

Akzo Nobel Chemicals, Inc.
as successor to Imperial Chemical
Industries PLC, and National Starch
and Chemical Co. (Discovery Only),
Corn Products International, Inc.,
as successor to National Starch
and Chemical Co. (Discovery Only),
Henkel Corporation, individually
and as successor-in-interest to
the Adhesive and Electronics
Division of National Standard
Chemical Co. (Discovery Only), and
National Starch, LLC,
individually and as successor to
National Starch and Chemical Co.
(Discovery Only),

Defendants,

and

Union Carbide Corporation,

Defendant-Respondent.

1

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| January 19, 2022 | June 30, 2022 |

Amber R. Long argued the cause for appellant (Levy
Konigsberg, attorneys; Amber R. Long on the briefs).

Michael A. Scodro, of the Illinois bar, admitted pro hac
vice, argued the cause for respondent (Caruso Smith
Picini and Mayer Brown, attorneys; Richard D. Picini,
Michael A. Scodro, and Craig Woods, of the Illinois bar,
admitted pro hac vice, of counsel and on the briefs).

Jared M. Placitella argued the cause for amicus curiae the
New Jersey Association for Justice (Cohen, Placitella &
Roth, attorneys; Jared M. Placitella and Christopher M.
Placitella, of counsel and on the brief).

Scott A. Rader submitted a brief on behalf of amicus
curiae the Coalition for Litigation Justice, Inc. (Mintz,
Levin, Cohn, Ferris, Glovsky and Popeo, attorneys; Scott
A. Rader, of counsel and on the brief).

Philip S. Goldberg submitted a brief on behalf of amici
curiae the Chamber of Commerce of the United States of
America and the New Jersey Civil Justice Institute
(Shook, Hardy & Bacon, attorneys; Philip S. Goldberg,
Mark A. Behrens, of the Virginia and District of
Columbia bars, admitted pro hac vice, and Cary
Silverman, of the Maryland and District of Columbia
bars, admitted pro hac vice, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

Willis Edenfield died from mesothelioma due to exposure to asbestos in a manufacturing plant, where he worked for approximately forty years. Plaintiff, the administrator of Edenfield's estate, filed a failure-to-warn product liability action against Union Carbide, a manufacturer and supplier of asbestos that Edenfield handled in the workplace.

The trial court charged the jury that, to fulfill its duty to Edenfield, Union Carbide had to place adequate warnings on its asbestos bags <u>and</u> provide warnings and information about the dangers of its products to the employer to be transmitted to Edenfield. The failure to provide adequate warnings through either means, the court instructed, would constitute a breach of Union Carbide's duty to warn.

The court also advised the jury that plaintiff had to prove that Union Carbide's inadequate warnings, if any, were the proximate cause of the harm caused to Edenfield -- that the inadequate warnings were "a substantial factor" in causing Edenfield's death and that his exposure to its asbestos was not "casual or minimal," nor "a remote or trivial cause" of his contracting mesothelioma.

A jury found that Union Carbide breached its duty to warn and was liable in causing Edenfield's disease and death. The jury determined that Union Carbide placed inadequate warnings on the asbestos bags handled by

Edenfield. The jury also determined that the inadequate product warnings were the proximate cause of Edenfield's death and awarded his estate substantial damages. The jury did not find that Union Carbide failed to take reasonable steps to ensure that adequate warnings reached Edenfield through his employer.

The Appellate Division concluded that the trial court erred in two ways. First, it failed to instruct the jury that Union Carbide could discharge its duty to warn by taking reasonable measures to inform Edenfield of the dangers of asbestos through his employer. Second, it did not advise the jury in the precise language of Sholtis v. American Cyanamid Co. -- that plaintiff had to demonstrate medical causation by establishing that Edenfield was exposed to Union Carbide's products with sufficient "frequency, regularity and proximity," quoting 238 N.J. Super. 8, 28-29 (App. Div. 1989). Accordingly, the Appellate Division vacated the verdict and remanded for a new trial.

We now reverse. In cases involving the use of asbestos in the workplace, we have held that an asbestos manufacturer or supplier has a dual duty to provide adequate warnings of the risks of the product to both the employee and the employer. See Coffman v. Keene Corp., 133 N.J. 581, 606-08 (1993); Theer v. Philip Carey Co., 133 N.J. 610, 620-21 (1993) (discussing Coffman, its companion case). That approach enhances workplace safety by

4

giving workers the means to protect themselves when faced with exposure to a potentially deadly substance such as asbestos -- a known cause of mesothelioma, which has killed 45,221 people between 1999 and 2015.

Union Carbide knew that asbestos exposure causes cancer. Placing adequate warnings on asbestos bags was clearly feasible, yet Union Carbide chose not to do so. Union Carbide therefore deprived Edenfield of critical information -- information that would have allowed him to make vital decisions concerning his life and health. A properly warned worker can undertake protective measures to minimize the risk of exposure or decide not to continue employment in a job handling toxic substances. Adequate warnings provide workers with a choice. Adequate warnings promote worker safety; inadequate warnings can endanger a worker's life.

In light of our common law jurisprudence, and for overarching public policy reasons, we hold that an asbestos manufacturer or supplier that places inadequate warnings on asbestos bags used in the workplace has breached its duty to the worker, regardless of whether it provides the employer with the correct information, which is reasonably intended to reach its employees.

We also find that the trial court's modified Model Jury Charge on proximate cause -- even though it did not parrot the language in Sholtis -- sufficiently guided the jury in determining medical causation. First, Sholtis

5

cautioned that whether exposure to asbestos constitutes "a substantial factor" in causing mesothelioma does not depend on "catch words" but on whether the legal concepts were thoroughly conveyed to the jury. See 238 N.J. Super. at 29. Second, a rigid application of the Sholtis "frequency, regularity, and proximity" test would not have accounted for the conflicting medical opinions in this case. Medical testimony was presented that even slight exposure to asbestos can cause mesothelioma. The trial court properly instructed the jury that Edenfield's exposure to Union Carbide's products, which allegedly caused his mesothelioma, could not be a "remote or trivial cause" or based on "minimal contact" or "mere guesswork."

Accordingly, we reinstate the jury's verdict and award of damages. We refer the matter to the Supreme Court Committee on Model Civil Jury Charges to review the current instructions on proximate cause in asbestos cases.

## I.

On June 27, 2011, Thomasenia Fowler -- as administrator of her husband Willis Edenfield's estate -- initiated a wrongful death/product liability action against Union Carbide.[1] The case was tried before a jury between December 3,

---

[1] After the conclusion of discovery, the trial court granted Union Carbide's motion for summary judgment. Fowler appealed, and the Appellate Division reversed and remanded the matter for trial.

6

2018, and January 22, 2019.  The record before us is based on the testimony elicited and the exhibits admitted at trial.

A.

Between 1954 and 1994, Edenfield worked at a plant that manufactured adhesive products in Bloomfield, New Jersey.[2]  During those years, three different companies operated and manufactured the same products at the Bloomfield Plant (the Plant):  Rubber & Asbestos Corp., from 1954 to 1962; PPG Industries Inc., from 1962 to 1971; and National Starch and Chemical Co., from 1971 to 1994.

Rodney Dover, who worked with Edenfield for twenty-six years, testified to the tasks performed by Edenfield and the workplace environment at the Plant.[3]  Edenfield worked in a small room, approximately twenty feet by twenty feet, known as the batching area.  He would go to the warehouse and bring raw ingredients, including small asbestos bags, back to the room.  There, Edenfield opened the bags, poured out the ingredients, weighed them, and placed them into containers, which were shipped to other parts of the Plant for further processing.

---

[2]  Edenfield served in the army for two years, from February 1958 to February 1960, before returning to the Plant.

[3]  Edenfield died before the filing of the lawsuit in 2011.

Between 1969 and 1984, Union Carbide shipped fifty-six thousand pounds of its Calidria brand asbestos -- packaged in ten- and forty-pound bags -- to the Bloomfield Plant.[4]  Johns Manville also supplied the Plant with larger asbestos bags, weighing from 150 to 200 pounds.  Dover recalled that Edenfield worked with the smaller asbestos bags, presumably those provided by Union Carbide.

Dover expressed concern about dust inhalation to his supervisor, stating that the workers needed more ventilation.  Although the Bloomfield Plant provided respirators, no one from the company advised the workers when to use them.  According to Dover, the companies operating the Plant did not host safety meetings or issue written warnings to inform the employees of the hazards posed by their work environment.  The companies never arranged for Dover to undergo a physical examination by a doctor or nurse hired by the Plant.  Although the Plant's records indicate that the levels of asbestos in the air were monitored in the years 1977, 1982, 1991, and 1992, Dover did not remember the company ever taking air samples.

---

[4]  Calidria is a brand of chrysotile asbestos from California.  The parties' experts offered competing opinions about the health risks posed by Calidria asbestos.

B.

The Warnings

1.

In 1968, Union Carbide began placing a warning on its Calidria asbestos bags. The labeling on the bags stated: "WARNING: BREATHING DUST MAY BE HARMFUL DO NOT BREATHE DUST." However, an asbestos toxicology report in 1964, revised in 1969, authored by physicians in Union Carbide's Industrial Medicine and Toxicology Department, presented a fuller picture of the dangers posed to workers by the asbestos in its bags. The 1969 Union Carbide toxicology report explained that "[a] type of cancer named mesothelioma has been noted to be associated with asbestos exposure" and "may occur in individuals with histories of only slight exposures" twenty to forty years earlier. (emphasis added). The report further discussed the known risks of asbestos exposure and recommended health and safety measures. Although Union Carbide instructed its salesmen to inform customers of the report's contents, nothing in the record indicates that the report itself was sent to Edenfield's employers.

In compliance with an emergency standard imposed by the Occupational Safety and Health Administration (OSHA), in 1972 Union Carbide changed the warning label to state: "CAUTION Contains Asbestos Fibers Avoid

Creating Dust Breathing Asbestos Dust May Cause Serious Bodily Harm."

That same year, OSHA invited comments on its emergency standard for warning labels on asbestos products.

The National Institute for Occupational Safety and Health (NIOSH) recommended that a more urgent warning be given: "HARMFUL: May Cause Delayed Lung Injury (Asbestosis, Lung Cancer). DO NOT BREATHE DUST Use only with adequate ventilation and approved respiratory protective devices."[5] Union Carbide did not upgrade its warning based on the NIOSH recommendation.

Similarly, the Manufacturing Chemists' Association proposed an enhanced label warning:

> WARNING: HARMFUL IF INHALED MAY CAUSE DELAYED LUNG INJURY (ASBESTOSIS, LUNG CANCER) Do not breathe dust. Use only with adequate local exhaust ventilation or approved respiratory protective devices. Remove dust and fibers

---

[5] OSHA and NIOSH are different government organizations. OSHA is a part of the United States Department of Labor. Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health (NIOSH) Fact Sheet 1 (2003), https://www.cdc.gov/niosh/docs/2003-116/pdfs/2003-116.pdf?id=10.26616/NIOSHPUB2003116. OSHA is charged with "developing and enforcing workplace safety and health regulations." Ibid. NIOSH is a part of the United States Department of Health and Human Services. Ibid. It is charged with ensuring "safe and healthful working conditions for working men and women by providing research, information, education, and training in the field of occupational safety and health." Ibid.

from clothing only by vacuum cleaning. Clean work areas with vacuum cleaners or wet cleaning methods.

In a letter to OSHA, the Manufacturing Chemists' Association indicated that its proposed warning would "reflect additional critical information" and "strengthen the message." One of the doctors from Union Carbide's medical department was a member of the Association's committee that made the proposal. Nevertheless, Union Carbide did not upgrade its warning label on its asbestos bags.[6]

By 1983, Union Carbide's in-house staff placed the company on notice that its warning label inadequately addressed the lethal dangers of asbestos exposure. An internal memorandum dated February 15, 1983, from Union Carbide employee R.W. Rebholz, stated that "[i]t is widely recognized" that the 1972 label on Union Carbide's Calidria products "understates the risk associated with exposure to asbestos dust." Rebholz proposed an alternative warning:

> Asbestos: Warning -- cancer hazard, higher risk in smokers, cancer hazard is associated with breathing asbestos dust. Where dust is present wear a respirator, which has been approved by O.S.H.A. or N.I.O.S.H. for the conditions encountered. For industrial use only. Do not reuse packaging material.

---

[6] OSHA retained the language in its emergency standard.

Rebholz explained that Union Carbide could have used the more protective warning label with OSHA's approval. Nevertheless, Union Carbide declined to adopt Rebholz's proposed warning label, claiming that, when combined with the 1972 label, it "would be confusing to the individual using the product." Accordingly, Union Carbide never submitted Rebholz's proposed enhanced warning to OSHA for approval.

2.

Union Carbide presented evidence that it periodically provided information and various safety warnings about its asbestos products to Edenfield's employers and requested that the information and warnings be made available to the Plant's employees. Over a course of years, Union Carbide forwarded to its "Calidria" customers such items as Material Safety Data Sheets, OSHA regulations, health and safety pamphlets published by the Asbestos Information Association of North America (AIA/NA), and toxicology reports, which, in their totality, discussed the chemical properties of asbestos and provided safety warnings and measures to minimize the danger of asbestos inhalation.

In 1969, Union Carbide furnished its customers with a toxicology report that recommended ways to control asbestos dust through adequate ventilation and noted that "mesothelioma" had been "associated with asbestos exposure in

12

recent years" and "may occur in individuals with histories of only slight exposures."

In 1971, Union Carbide representatives met with an environmental control manager at the Bloomfield Plant and discussed "toxicity problems in using Calidria asbestos" and "safe operating procedures," though a Plant manager still expressed concern "about the generation of asbestos dust" through a particular procedure. By 1972, Union Carbide offered to provide air monitoring to its customers.

In 1975, 1977, and 1981, Union Carbide forwarded to the operators of the Bloomfield Plant Material Safety Data Sheets and requested that the Plant's employees be advised of "best safety practices" in the use of its Calidria asbestos and that safety data and material be made available to them.

In its 1981 letter, Union Carbide provided a copy of the OSHA standards on asbestos and recommended putting up posters instructing employees to use respirators, vacuum dust spills, leave dusty clothes at work, repair broken asbestos bags, report unsafe conditions, and stop smoking. The 1981 letter included a poster warning that "[e]xposure to asbestos fiber can increase the risk of developing certain diseases over a period of years," including "mesothelioma -- a rare cancer of the lining of the chest or abdominal cavities."

Testimony was also elicited about a June 1972 Union Carbide memorandum to its salespersons on how to deal with customers who questioned the safety of its asbestos products. The memorandum instructed salespersons to "control[] the conversation," to emphasize that "the vast numbers of customers successfully use asbestos without problem," and to put the customer on the defensive "[i]f the customer is persistent and threatens to eliminate asbestos."

In its Appellate Division brief, Union Carbide highlighted that the Plant's operators declined its offer "to monitor the Plant's air quality" and "to disseminate the warnings or instructions to Plant employees."

C.

The Expert Witnesses

In a proverbial battle of the experts, each side presented differing opinions about the nature of the danger posed by Calidria asbestos and the degree of exposure necessary to cause mesothelioma.

1.

Plaintiff's Expert

Dr. Jacqueline Moline, M.D., an expert in occupational medicine in the field of asbestos-related diseases, testified that mesothelioma is "a dose response disease" -- the greater the exposure to asbestos, the greater the

14

likelihood of contracting mesothelioma. Dr. Moline emphasized, however, that even "short exposures to asbestos cause mesothelioma." She noted that Edenfield's exposure to asbestos was not brief but a daily feature of his work life for years, as he was "pouring or scooping" Union Carbide's products. Because "asbestos is light and fluffy and it becomes airborne easily," she opined, "Edenfield's exposure to Union Carbide's asbestos [was] significant enough to substantially contribute to his mesothelioma." Dr. Moline stated that she and most scientists share the opinion that all forms of asbestos, without exception, cause mesothelioma. She concluded that Edenfield's exposure to Union Carbide's Calidria asbestos was a substantial factor in his contracting the deadly disease.

2.

Union Carbide's Experts

Union Carbide presented the testimony of three experts.

Dr. James D. Crapo, M.D., an expert in the field of pulmonary and internal medicine and asbestos-related diseases, testified that if Edenfield was exposed to Union Carbide's Calidria asbestos, it would not have been a substantial contributing cause of Edenfield's contracting mesothelioma. Dr. Crapo opined that Union Carbide's Calidria asbestos does not contain the type of fibers that could reach the lower lung and cause mesothelioma.

15

Nevertheless, Dr. Crapo conceded that the type of asbestos produced by Union Carbide "has been associated . . . at high dose with mesothelioma."

Dr. William Dyson, Ph.D., an expert in the fields of industrial hygiene, exposure and risk assessments, and OSHA requirements, testified that Union Carbide's Calidria asbestos presents a risk of mesothelioma only at "very high exposure doses," if at all. Dr. Dyson concluded that Edenfield's "cumulative exposure" to Union Carbide's Calidria asbestos at the "[P]lant was not sufficiently high" to have presented a risk of his contracting mesothelioma.

Dr. Victor Roggli, M.D., an expert in pathology and asbestos-related diseases, concluded -- for reasons similar to those of Dr. Crapo and Dr. Dyson -- that although asbestos exposure was the cause of Edenfield's mesothelioma, Union Carbide's Calidria asbestos was not a substantial contributing factor in Edenfield's illness.

## D.

## The Charge to the Jury

Union Carbide objected to two jury instructions that are the focus of this appeal. One instruction addressed the adequacy of the warnings that Union Carbide gave about its asbestos products to the Bloomfield Plant's employees, and the other instruction addressed the standard to prove medical causation.

16

1.

The trial court instructed the jury that plaintiff had to prove by a preponderance of the evidence the following elements of her strict liability and negligence claims:

1. Edenfield was exposed to Union Carbide's asbestos;

2. Edenfield's exposure to Union Carbide's asbestos was a substantial factor in causing his mesothelioma (medical causation);

Solely for strict liability claim:

3a. Union Carbide failed to provide adequate warnings or instructions on its products rendering them not reasonably safe for their intended and foreseeable use;[7] or

3b. Union Carbide failed to take reasonable steps to ensure that its warnings reached Edenfield;

If the jury found that plaintiff proved 3a or 3b, or both, then the jury was instructed to consider whether plaintiff established product-defect causation.

4. Union Carbide's failure to provide adequate warnings or instructions with respect to its product or failure to take reasonable steps to ensure

---

[7] The jury asked the trial court regarding question 3a, "is adequate warning/instructions only to the labels on the asbestos bags or does it include other materials[?]" The trial court replied, "[t]he answer to that question is it deals with the asbestos bags."

17

that its warnings reached Edenfield was a proximate cause of

Edenfield's exposure to Union Carbide's asbestos;

Solely for negligence claim:

5.  Union Carbide was negligent in failing to provide adequate warnings

or instructions with respect to its asbestos; and

6.  Union Carbide's negligence in failing to provide adequate warnings

or instructions with respect to its asbestos was a proximate cause of

Edenfield's exposure to Union Carbide's asbestos.

The court made clear in its instructions that Union Carbide could be held liable either for failing to place adequate warnings on its Calidria asbestos bags or failing to disseminate adequate warnings and information to the Bloomfield Plant intended for its employees.

The trial court instructed the jury as follows:[8]

> In the employment context, a manufacturer or supplier of products that are used by employees is required to take reasonable steps to ensure that its warnings reach those employees. Satisfying that obligation may require that warnings be communicated to employers, as well as employees. In this case there has been evidence of warnings provided both on labels on Union Carbide's asbestos as well as warnings and information provided to Mr. Edenfield's employers. In determining whether Union Carbide satisfied its duty to warn, you

---

[8] The trial court modified Model Jury Charge 5.40C to address the facts of this case. See Model Jury Charges (Civil), 5.40C, "Failure to Warn/Instruct" (rev. Sept. 2021).

may consider both of these avenues of warning.  The duty to put an adequate warning on the product may not be discharged by warnings and information to the employer.

[(emphases added).]

The trial court further instructed the jury:

In an employment context, the manufacturer or supplier of products that are used by employees has an additional duty to take reasonable steps to ensure that its warnings reach those employees, which may require that warnings be communicated to employers, as well as employees.  Thus, even if you find that the warnings on Union Carbide's asbestos were adequate, you may find that Union Carbide's failure to take reasonable steps to ensure that its warnings reached Mr. Edenfield was a proximate cause of Mr. Edenfield's exposure to Union Carbide's asbestos and his mesothelioma.

Union Carbide objected to those instructions.  It had earlier offered its own proposed charge, which would have allowed the jury to find that, even if the warnings on the asbestos bags were inadequate, Union Carbide was not liable if it provided the employer warnings and information "with the intention or purpose that the employer alert employees to the dangers of the product and the proper methods of mitigating the risks presented by the product."

2.

The court gave the following instructions on medical causation:

By proximate cause it is meant that the failure to warn was a substantial factor which singly, or in combination with another cause, brought about the injury.

19

"Substantial" means that a product was an efficient cause of the Plaintiff's injury, and that it was not a remote or trivial cause having only an insignificant connection with the harm. Liability should not attach based on casual or minimal contact with the product. Liability should not be imposed on mere guesswork.

The trial court rejected Union Carbide's proposed Sholtis charge on medical causation, which would have required plaintiff to "prove that Mr. Edenfield was exposed to [Union Carbide's] product with <u>sufficient frequency, with a regularity of contact, and with the product in close enough proximity</u> to show that the exposure . . . was a substantial contributing factor to Mr. Edenfield's mesothelioma." (emphasis added). The court reasoned that it had never given such a charge in a mesothelioma case and had always relied on the substantial factor test in the Model Charge.

E.

The Verdict

The jury returned a verdict in favor of plaintiff on both her strict liability and negligent failure to warn claims. In reaching that conclusion, the jury made specific findings recorded on the verdict sheet. The jury found that (1) Union Carbide failed to provide adequate warnings or instructions on its product (the asbestos bags), (2) the failure to do so was a proximate cause of Edenfield's exposure to Union Carbide's asbestos, and (3) that exposure was a substantial factor in causing his mesothelioma.

20

The jury also determined that plaintiff did not prove that Union Carbide failed to take reasonable steps to ensure that the warnings it gave to Edenfield's employers reached Edenfield -- a finding that, in the end, did not undermine the verdict because, pursuant to the charge, the jury was advised that providing warnings and instructions to the employer alone did not satisfy Union Carbide's duty to warn Edenfield.[9]

The jury awarded plaintiff an aggregate amount of $2,380,000 in damages.

The court denied Union Carbide's motions for judgment notwithstanding the verdict and, alternatively, for a new trial. Union Carbide appealed.

_____

[9] Contrary to our dissenting colleagues' assertion, post at ___ (slip op. at 16-17), the jury charge made clear that Union Carbide had to provide adequate warnings not only on the asbestos bags, but also to Edenfield's employers. No objective reading of the charge suggests that Union Carbide had only a duty to provide adequate warnings on the asbestos bags but could provide lesser warnings to the employer.

For example, the jury was instructed that it "must determine what warnings and instructions [Union Carbide] provided and whether those warnings and instructions were adequate." The court stated that "[a]dequate information may be required to be given to others in the chain of distribution of the product such as from the manufacturer and the seller to the buyer" -- Edenfield's employer. The court made clear to the jury that it could consider the adequacy of the warnings communicated on the bags and those communicated to the employer. The jury knew that question 3a related to the warnings on the asbestos bags and question 3b related to the warnings provided to the employer, as indicated by its query to the court.

21

F.

The Appellate Division

In an unpublished decision, the Appellate Division reversed, finding that the trial court erred in charging the jury on two separate issues.

On the first issue, the Appellate Division held that the trial court wrongly instructed the jury that, if Union Carbide placed inadequate warnings on its asbestos products, it could not otherwise discharge its duty by providing adequate warnings and information to the employer to be passed along to employees. According to the Appellate Division, under case law, the adequacy of the warnings depends on a standard of "reasonableness under the circumstances." The Appellate Division agreed that Union Carbide owed a "concurrent duty to warn both the employee and employer," and that a "manufacturer may not delegate to the employer its duty to warn the employee of the unsafe product." Nevertheless, the court stated that "in appropriate circumstances, the manufacturer may discharge this duty . . . by conveying the warnings to the employer and relying on the employer to convey them to the employee."

The Appellate Division reasoned:

> If the warnings and instructions on the product are inadequate, the manufacturer must make greater efforts

22

to warn the employer of the product's dangers, provide sufficient information to the employer on the product's dangers and safe use, and ensure that the employer conveys this information to the employee. However, the manufacturer may also have to establish that the nature of the workplace prevented the manufacturer from conveying the information directly to the employee.

To a large extent, the court relied on its decision in Grier v. Cochran Western Corp., a failure-to-warn case involving an airline employee injured while using a beltloader vehicle manufactured by the defendant. 308 N.J. Super. 308, 312-14 (App. Div. 1998). In determining the scope of the manufacturer's duty to warn, the Appellate Division looked to the Grier court's reliance on the Restatement (Third) of Torts: Products Liability § 2 cmt. i (Am. Law Inst. 1998), which sets forth a standard "of reasonableness in the circumstances."

On the second issue, the Appellate Division asserted that the trial court erred in not charging the jury on the "frequency, regularity, and proximity" test set forth in Sholtis, 238 N.J. Super. at 28-29, and later adopted in James v. Bessemer Processing Co., 155 N.J. 279, 301-04 (1998), for establishing medical causation in asbestos-exposure cases involving multiple defendants. According to the Appellate Division, "[t]he Sholtis test requires plaintiff to prove that Edenfield was exposed to Union Carbide's asbestos on numerous occasions, and while he was physically close to the product." The trial court

23

went awry, said the Appellate Division, because "the court's instructions required plaintiff to prove only that Edenfield's exposure was more than minimal and that it had a connection to his injury that was greater than insignificant." The appellate court concluded that "[a]lthough the jury found plaintiff proved that Edenfield was exposed to Union Carbide's asbestos, it is not possible to know whether the jury would have found that he was exposed with the requisite frequency, regularity and proximity."

Based on what it perceived to be erroneous jury instructions, the Appellate Division remanded for a new trial.

We granted plaintiff's petition for certification, 248 N.J. 409 (2021), which raised two issues. The first issue is whether a manufacturer or supplier that puts inadequate warnings on its asbestos products used in the workplace can fulfill its duty to warn by disseminating adequate information to the employer with the intention that such information will reach the workers using those products. The second issue is whether, in charging on medical causation in this mesothelioma case, the trial court was required to give the frequency, regularity, and proximity language in Sholtis rather than the substantial factor test in the Model Civil Charge, as modified by the court.

We also granted the motions of the New Jersey Association for Justice, the Chamber of Commerce of the United States of America and the New

Jersey Civil Justice Institute, and the Coalition for Litigation Justice, Inc., to participate as amici curiae.[10]

## II.

### A.

Plaintiff submits that the Appellate Division's decision is inconsistent with well-settled case law. She contends that a manufacturer of a hazardous product used in the workplace has a non-delegable duty to provide not only adequate warnings to the employer, but also to the employee, citing Coffman, 133 N.J. at 607, and Theer, 133 N.J. at 620-21. The employer warnings, she states, are not a substitute for a safety label on a dangerous product; the employer warnings are intended as an additional safeguard so an employee can make an informed and meaningful decision on whether and how to work with a product such as asbestos. Plaintiff asserts that Union Carbide failed to provide adequate warnings on its asbestos bags to alert Edenfield about known dangers but now seeks to evade liability for its unsafe products because it forwarded useful information to the employer. She argues that the manufacturer should not be allowed to outsource its duty because the "harsh[] reality" is that some

---

[10] The Chamber of Commerce and the New Jersey Civil Justice Institute filed a joint brief.

25

employers have been known to subject "workers to the risks of injury and disease," quoting Millison v. E.I. du Pont, 101 N.J. 161, 177 (1985).

Additionally, plaintiff argues that the trial court gave the proper medical causation charge -- the substantial factor test -- in this asbestos case involving mesothelioma. Plaintiff relies on Kurak v. A.P. Green Refractories Co. for the proposition that "[w]here there is competent evidence that one or a de minimis number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury," quoting 298 N.J. Super. 304, 321 (App. Div. 1997). Plaintiff contends that the Appellate Division erred in finding that the "frequency, regularity, and proximity" test was appropriate in this mesothelioma case.

Amicus the New Jersey Association for Justice echoes the arguments advanced by plaintiff. The Association emphasizes that "warnings conveyed by the manufacturer directly to workers are necessary to ensure their safety" and that allowing a manufacturer to discharge its duty by simply warning the employer will profoundly limit an injured employee's remedies to those afforded under the Workers' Compensation Act, N.J.S.A. 34:15-7 to -35.22.

B.

Union Carbide urges this Court to affirm the Appellate Division. In Union Carbide's view, "the Appellate Division simply held that jurors should

be allowed to consider whether it was reasonable for Union Carbide to rely on Edenfield's employer to relay some of . . . [the] product warnings to Edenfield." Union Carbide argues that the jury should have been instructed that if it took "reasonable steps" to have its warnings reach employees through the employer, then it could be absolved of liability, even though its warnings on the asbestos bags were inadequate. Union Carbide asserts that it is reasonable in some workplaces to rely on employers to disseminate warnings to employees, a position consistent with the Third Restatement § 2 cmt. i, relied on by the Appellate Division in Grier.

Union Carbide also contends that the Appellate Division rightly held that the trial court erred in not charging the Sholtis "frequency, regularity, and proximity" test as the standard for proving medical causation. It reasons that the Sholtis test can be "calibrated to the level of exposure required for the injury at issue" and asserts that the test has been applied by New Jersey courts in mesothelioma cases.

Amici the Chamber of Commerce of the United States of America and the New Jersey Civil Justice Institute echo Union Carbide's arguments and add that "[f]ocusing solely on a product's packaging" fails to account for the way industrial products are used in the workplace and will cause manufacturers to

27

attach lengthy warnings that will diminish important information needed to be conveyed to employees.

Amicus the Coalition for Litigation Justice, Inc., also maintains that the jury in this case should have been instructed to consider whether Union Carbide's warnings to the employee -- directly through labeling on the product and through the employer as a third-party intermediary -- were reasonable under the circumstances. The Coalition proposes that the Court adopt the Third Restatement's approach and allow the jury to weigh all of the factors related to the reasonableness of the employer's actions.

### III.

### A.

Whether the trial court correctly instructed the jury on the adequacy of the product warnings and medical causation are issues of law that we review de novo. State ex rel. Comm'r of Transp. v. Marlton Plaza Assocs., L.P., 426 N.J. Super. 337, 347 (App. Div. 2012) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We do not defer to the trial court or Appellate Division's interpretive legal conclusions, unless we are persuaded that they are correct. See Lewis v. Harris, 188 N.J. 415, 431-32 (2006).

B.

This case is governed by our common law jurisprudence on product liability and not the New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11.  See Whelan v. Armstrong Int'l Inc., 242 N.J. 311, 331 (2020).  "The PLA by its explicit terms does 'not apply to any environmental tort action.'"  Ibid. (quoting N.J.S.A. 2A:58C-6).  Asbestos claims fall within the category of an environmental tort because such cases largely involve workers' exposure to contaminated air.  Ibid.  Significantly, "[t]he standard in a failure-to-warn case is no different, whether the action is considered under the PLA or our common law jurisprudence."  Ibid. (citing Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 49 (1996)).[11]

"[A] manufacturer has a duty to ensure that the products it places into the stream of commerce are safe when used for their intended purposes."  Id. at

---

[11]  The PLA states, in part, that

> [a]n adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used.

> [N.J.S.A. 2A:58C-4.]

332 (alteration in original) (quoting Zaza, 144 N.J. at 48).  A product that is shipped to a workplace without adequate warnings about the product's inherent dangers is a defective product.  Ibid. (citing Feldman v. Lederle Labs., 97 N.J. 429, 450 (1984)); see also Becker v. Baron Bros., Coliseum Auto Parts, Inc., 138 N.J. 145, 166 (1994) (stating "that an asbestos-related product is unsafe because a warning could have made it safer" (quoting Campolongo v. Celotex Corp., 681 F. Supp. 261, 264 (D.N.J. 1988))).

The risk of contracting "serious and often deadly asbestos-related illnesses, such as asbestosis and mesothelioma," from exposure to asbestos dust is well known.  Whelan, 242 N.J. at 338 (citing Beshada v. Johns-Manville Prods. Corp., 90 N.J. 191, 197-98 (1982)).  Equally clear is that manufacturers of asbestos products "have the ability to act reasonably" by putting "proper warnings on their products, making those products safer 'at virtually no added cost and without limiting [the product's] utility.'"  Ibid. (alteration in original) (quoting Beshada, 90 N.J. at 201-02).

In this common law, strict-liability failure-to-warn action, plaintiff had to prove that (1) without adequate warnings, use of Union Carbide's asbestos bags by workers, such as Edenfield, was dangerous -- a product defect; (2) Union Carbide forwarded the asbestos bags to the Bloomfield Plant without

30

adequate warnings -- in a defective condition; and (3) the inadequate warnings proximately caused Edenfield to contract mesothelioma. See id. at 333.

The third factor requires proof of two different forms of causation: product-defect causation and medical causation. Ibid. (citing James, 155 N.J. at 297). "For product-defect causation, the plaintiff must show that the defect in the product -- the lack of warnings or adequate warnings -- was a proximate cause of the asbestos-related injury." Ibid. (citing Coffman, 133 N.J. at 594). "For medical causation, the plaintiff must show that the injury was 'proximately caused by exposure to defendant's asbestos product . . . .'" Ibid. (quoting Coffman, 133 N.J. at 594).

The first issue is whether the trial court properly charged the jury on product defect in a workplace setting. The court instructed the jury that plaintiff had to prove that Union Carbide's asbestos products were rendered defective in one or two ways: the failure to place adequate warnings on the asbestos bags handled by Edenfield, or the failure to disseminate adequate warnings to the operators of the Bloomfield Plant with the intention that they reach Edenfield. In other words, did the trial court correctly charge the jury that if the warnings on the asbestos bags were inadequate, Union Carbide could not escape liability by giving Edenfield's employers proper warnings?

31

In line with the trial court's charge, our jurisprudence establishes that an asbestos manufacturer or supplier has a duty to provide adequate warnings to both the employee directly and the employer.

C.

In Coffman, we held that, in the workplace context, "the basic duty of a manufacturer or supplier [is] to warn both employers and employees with respect to unsafe products in the workplace." 133 N.J. at 608. In that strict liability failure-to-warn case arising in a workplace setting, we recognized a presumption -- subject to limited exceptions -- that if the manufacturer had provided an adequate product warning, the plaintiff worker would have heeded the warning to minimize the risk of injury. Id. at 591, 602-03. In coming to that conclusion, we emphasized in asbestos-exposure cases the importance of the warning actually reaching the employee. See id. at 606. The asbestos products supplied by the defendant and handled by the plaintiff in Coffman did not contain any safety warnings. Id. at 592.

In light of the dangers posed by asbestos to the health of workers, we have repeatedly noted the dual duty of an asbestos manufacturer or supplier to warn both the employee and the employer. Thus, we stated in Coffman: "we reasonably assume that a manufacturer or supplier, consistent with its own duty, will provide an adequate warning of its unsafe product to employers as

32

well as employees"; "[c]onsistent with [the] duty to warn, it should be presumed that such warnings directed to employers and employees will be heeded"; and "in the employment setting, the adequacy of a warning with respect to unsafe products may require that they be communicated to employers as well as employees." Id. at 607-09 (emphases added) (citing Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 400 (1982); Bexiga v. Havir Mfg. Corp., 60 N.J. 402, 403 (1972)).

The importance of placing adequate warnings on the product itself, when feasible, is informed by the fact that some employers may not provide critical health warnings and information to their workforce. "Unfortunately, there are examples of employers who fail to take reasonable measures to assure the safety and health of their employees in the face of warnings." Id. at 608 (citing Millison v. E.I. du Pont, 115 N.J. 252 (1989); Beshada, 90 N.J. 191).

Dual warnings -- possibly redundant warnings -- are warranted because workers "exposed to a defective product" without adequate warnings are deprived of the ability "to exercise [a] meaningful choice with respect to confronting the risk of injury posed by the product." See id. at 605. When dealing with a potentially lethal product such as asbestos, it is also reasonable to impose a duty requiring the manufacturer to provide important information to the employer, who can then "give its employees adequate warnings as part

33

of its more encompassing duty to provide employees with a safe and healthy workplace." Id. at 607.

In Theer, a companion case to Coffman, we emphasized again "that employers have an independent duty to provide a safe workplace for their employees, and that a manufacturer or supplier of a product intended for use in the workplace is under a concurrent duty to warn employers, as well as employees, concerning the safety risks of its products." Theer, 133 N.J. at 620-21 (emphasis added) (citing Coffman, 133 N.J. at 606-08). In cases involving toxic substances, the dual duty to warn both the employee and employer is now well ingrained in our law. We repeated this simple proposition in James, a toxic tort case, stating that "[i]n the employment context, a manufacturer's duty to warn of the dangers posed by its products extends to both the employer and the employees of the recipient entity." 155 N.J. at 298 (citing Coffman, 133 N.J. at 606-09).

### D.

In cases involving asbestos products in a workplace setting, we have hewed to the concurrent duty to warn, as in Coffman, where placing a warning on the product itself is feasible. In the present case, Union Carbide put an inadequate warning on its asbestos bags, despite its knowledge of the deficiency of that warning.

34

Union Carbide points to <u>Grier</u>, 308 N.J. Super. 308, a non-asbestos PLA case involving a sophisticated piece of machinery, as charting a different path. We disagree.

In <u>Grier</u>, the plaintiff airline employee operated a beltloader vehicle, which conveys cargo onto an aircraft. <u>Id.</u> at 312-13. Walking down the beltloader while the guardrail was down, the plaintiff slipped and fell approximately thirteen to fourteen feet onto the tarmac, injuring himself. <u>Id.</u> at 313-14. One of the plaintiff's product defect theories was "that the manufacturer breached its duty to give an adequate warning of the hazard of climbing and descending the conveyor without the raised guardrail." <u>Id.</u> at 316.

The evidence in <u>Grier</u> established that the guardrail on the beltloader was "painted 'OSHA yellow' to highlight its availability and required use" and that the manufacturer "offered free training to each airline who bought its beltloader." <u>Id.</u> at 319. Although the airline declined the manufacturer's offer, the airline trained its employees "on the use of the beltloader, including when to use the safety guardrail." <u>Ibid.</u> Two of the plaintiffs' co-workers testified that they were instructed to raise the guardrail when using the beltloader, and the airline's training specialist testified that he trained the plaintiff, who would have received the same guidance as his co-workers. <u>Id.</u> at 320-21.

The Appellate Division stated that "[t]he question simply is whether, in the context of a given case, the manufacturer acted reasonably in conveying adequate information on the safe use of its product." Id. at 318. The Appellate Division rejected the plaintiff's "contention that, as a matter of law, a manufacturer may not discharge its duty to warn by alerting the employer of the dangers in the operation of sophisticated machinery." Ibid. (emphasis added). In reaching that conclusion, the Grier court relied on the Restatement (Third) of Torts: Products Liability § 2 cmt. i, which, in part, provides:

> There is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to relay warnings. The standard is one of reasonableness in the circumstances. Among the factors to be considered are the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user.

The jury in Grier found in favor of the defendant. Id. at 316. The Appellate Division held that the jury's verdict was entitled to deference and that the evidence supported "the jury's finding that [the defendant manufacturer] did not breach its duty to warn." Id. at 321.

E.

Tens of thousands of employees have died from mesothelioma as a result of exposure to asbestos in the workplace. Jacek M. Mazurek et al., Malignant

36

Mesothelioma Mortality -- United States, 1999-2015, 66 Morbidity &

Mortality Wkly. Rep. 214, 217 (2017), available at https://www.cdc.gov

/mmwr/volumes/66/wr/pdfs/mm6608a3.pdf.  Our common law failure-to-warn

jurisprudence involving asbestos products is informed by the lethality of

asbestos exposure.  It recognizes "the simple notion that without warnings, the

users of potentially dangerous products are 'unaware' of the products' hazards

and therefore cannot 'protect themselves from injury.'"  Whelan, 242 N.J. at

335-36 (quoting Beshada, 90 N.J. at 209).  No one truly questions that raw

asbestos dispersed into the air is a highly toxic substance that threatens the

health of workers.[12]

In light of the deadly dangers posed by asbestos in the workplace,

Coffman and Theer imposed a special duty on manufacturers and suppliers of

asbestos -- the concurrent duty to warn not only the employee but also the

employer.  Coffman, 133 N.J. at 607, 609; Theer, 133 N.J. at 620-21.  That

dual-warning requirement provides heightened protections to workers in an

employment setting and the greatest assurance that critical -- perhaps even life-

saving -- information is disseminated to workers.  Under that approach, if the

---

[12]  We acknowledge "that asbestos-containing products are not uniformly
dangerous."  Whelan, 242 N.J. at 336 n.8 (quoting Becker, 138 N.J. at 160).
Here, however, we are dealing with raw asbestos.

worker does not read or is unable to read the warnings on the product -- here, the asbestos bags -- the fail-safe is that the manufacturer will supply the employer with warnings to disseminate to the employees. The goal is to ensure that the worker is informed of the product's dangers and of the safety measures to be taken. Holding manufacturers and suppliers of asbestos products liable for not complying with the concurrent warning requirement maximizes the likelihood that adequate warnings will reach the workers at risk.

In the end, if adequate warnings are not communicated to workers about the real health risks of asbestos, then those workers are denied the right "to exercise [a] meaningful choice with respect to confronting the risk of injury posed by the product." See Coffman, 133 N.J. at 605.

This case illustrates the importance of the dual-warning doctrine set forth in Coffman and Theer in asbestos cases and in James in highly toxic substance cases. Union Carbide was aware that the warnings on its asbestos bags understated the health risks to workers at the Bloomfield Plant, yet there was no mention in the warnings that inhaling asbestos fibers may cause lung cancer. Union Carbide knew that NIOSH and the Manufacturing Chemists' Association proposed more detailed warnings, particularly about the product's association with cancer; and it ignored its own in-house staff member who informed the company that its label warning on Calidria products "understates

38

the risk associated with exposure to asbestos dust" by failing to address the "cancer hazard."

In this case too, the dual warning requirement failed.  Not only did Union Carbide provide inadequate label warnings on its products, but as even Union Carbide conceded in its Appellate Division brief, the Bloomfield Plant's operators did not "disseminate the [manufacturer's] warnings or instructions to Plant employees."

Our common law jurisprudence governed the environmental torts in Coffman, Theer, and James -- cases involving highly toxic substances that posed an inherent risk to the users of the manufacturers' products on which the placement of adequate warnings was clearly feasible.  Inadequate warnings on those products rendered the products defective.  See Whelan, 242 N.J. at 332. Grier, which fell within the domain of the PLA, presented a much different scenario -- the operation of a sophisticated machine.  The complex nature of the machinery in Grier impelled the manufacturer to provide instructional manuals and to offer training, which ultimately was provided by the employer to its employees, including the plaintiff.

Different products may require different approaches.  Instructive label warnings may be more efficacious and feasible in dealing with certain toxic substances than sophisticated pieces of machinery.  Although information

39

disseminated by the employer may always be important in addressing how to safely operate or handle dangerous products in the workplace, in the case of sophisticated machinery supervisory training may be an especially significant component in reducing safety hazards, as suggested by Grier. We do not suggest a one-size-fits-all approach.

The PLA states that "[a]n adequate product warning . . . communicates adequate information on the dangers and safe use of the product." N.J.S.A. 2A:58C-4. But that standard must be viewed through the lens of how "a reasonably prudent person in the same or similar circumstances would have provided" the warnings, "taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used." Ibid. Pouring asbestos into a container with the likely dispersal of some toxic fibers into the air, with even brief exposure having potentially deadly consequences, is different from the potential dangers of operating a beltloader. The two scenarios do not present the same or similar circumstances, and therefore a reasonably prudent manufacturer must take into account the different characteristics of the products and the people who will use them.

No Supreme Court case or reported Appellate Division case has applied the Third Restatement of Torts: Products Liability to a case involving

40

asbestos, and we do not do so here.  But, if we were to do so, the directives in Coffman and Theer, and the charge to the jury in this case, would be consistent with the Third Restatement.

Looking at the factors enumerated in the Third Restatement in defining the standard of reasonableness, we begin with "the gravity of the risks posed by the product." Third Restatement § 2 cmt. i.  We need not repeat that asbestos exposure causes such deadly diseases as mesothelioma.  Asbestos exposure clearly poses grave health risks.

Next, we consider "the feasibility and effectiveness of giving a warning directly to the user." Ibid.  The appropriate warnings on Union Carbide's asbestos bags stating the products' risks fit just as well as the inadequate ones the company chose to maintain on the bags.  Placing effective warnings on the product was clearly feasible without additional cost.

Last, we consider "the likelihood that the intermediary will convey the information to the ultimate user." Ibid.  Responsible employers will present to their workforce the health risks related to the products that they handle, and the appropriate safety measures needed to be taken.  But our case law reveals that not all employers are responsible, and therefore the manufacturer's label warnings on the product may be critical in enabling workers to have a

41

"meaningful choice" in protecting their own health.  See Coffman, 133 N.J. at 605.

Thus, this Court's asbestos jurisprudence is not inconsistent with the Third Restatement.

In this asbestos case, we stand by the directives given in Coffman and Theer that the manufacturer had a duty to provide concurrent warnings both to the employee, through product labeling, and to the employer with the intention that the necessary safety information would be disseminated to the workforce.

We also conclude that the trial court properly charged the jury that "[t]he duty to put an adequate warning on the product may not be discharged by warnings and information to the employer."  Thus, Union Carbide's asbestos bags were defective products because of the inadequate warnings -- regardless of the information conveyed to the Bloomfield Plant with the intention that adequate safety information reach employees such as Edenfield.  The trial court appropriately allowed the jury to consider whether the lack of adequate warnings on the asbestos bags were "a proximate cause of Edenfield's exposure to Union Carbide's asbestos."

We therefore affirm the trial court's charge on product defect and reject the reasoning and holding of the Appellate Division on that issue.  In rendering this decision, we remain faithful to our jurisprudence, which holds "that '[t]he

burden of illness from dangerous products such as asbestos should be placed upon those who profit from its production and, more generally, upon society at large, which reaps the benefits of the various products our economy manufactures.'" See Whelan, 242 N.J. at 336 (alteration in original) (quoting Beshada, 90 N.J. at 209).

## IV.

We now turn to the question of whether the trial court correctly charged the jury on medical causation.

To establish medical causation in this case, plaintiff had to prove that Edenfield's disease was "proximately caused by exposure to [Union Carbide's] product." See James, 155 N.J. at 299. More specifically, to prove proximate cause, plaintiff had to establish that Edenfield's exposure to Union Carbide's Calidria asbestos, alone or in combination with other suppliers' products, "was a substantial factor in causing or exacerbating [his] disease" -- mesothelioma. See ibid. (quoting Sholtis, 238 N.J. at 30-31); see also Model Jury Charges (Civil), 5.40I, "Proximate Cause" (approved Feb. 1989). Generally, a substantial factor is "not a remote, trivial or inconsequential cause." Model Jury Charges (Civil), 6.12, "Proximate Cause -- Where There Is Claim That Concurrent Causes of Harm Were Present" (approved May 1998).

In this asbestos exposure case, in addition to instructing the jury in accordance with the Model Jury Charge on "substantial factor," the court charged the jury with language adapted to asbestos exposure cases. The court instructed the jury that a substantial factor is an "efficient cause" of the injury or disease and "not a remote or trivial cause having only an insignificant connection with the harm." The trial court also advised the jury that "[l]iability should not attach based on casual or minimal contact with the product. Liability should not be imposed on mere guesswork" -- language coming directly from Sholtis, 238 N.J. Super. at 29. (emphases added).

Union Carbide claims that the trial court strayed from the "frequency, regularity, and proximity test" set forth in Sholtis -- a test adopted by our Court in James. However, the Sholtis test is adaptable to varying scenarios and should not be rigidly and inflexibly applied. By any objective standard, the essence of the Sholtis test was conveyed to the jury in the distinctive circumstances of this case.

In Sholtis, the Appellate Division looked to other jurisdictions for guidance in refining the substantial factor test in cases involving asbestos exposure that caused asbestos-related diseases. 238 N.J. Super. at 28-29. Notably, the disease contracted in that case was asbestosis. Id. at 14. The Sholtis court took the approach that "a plaintiff [must] prove an exposure of

44

sufficient frequency, with a regularity of contact, and with the product in close proximity; and that such factors should be balanced for a jury to find liability." Id. at 28 (citing Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir. 1986) (establishing the "frequency, regularity and proximity" test)). By embracing the "frequency, regularity and proximity test," the Sholtis court asserted that liability should not be based on exposure to a product that is "casual or minim[al]" or "predicated on guesswork." Id. at 29. The court made clear, however, that the test is not defined by "catch words" and "the underlying concept should not be lost." Ibid.

In James, we applied the Sholtis test to an occupational-exposure, toxic-tort case in which the plaintiff alleged that the decedent's death from "stomach and liver cancer was proximately caused by prolonged, frequent and repetitive exposure to defendants' petroleum and chemical products." 155 N.J. at 284-86. In that case, we held that generally "a plaintiff in an occupational-exposure, toxic tort case may demonstrate medical causation by establishing . . . factual proof of the plaintiff's frequent, regular and proximate exposure to a defendant's products." Id. at 304.

Importantly, we explained that plaintiffs seeking to prove causation in toxic-tort litigation face "extraordinary and unique burdens" that are "more subtle and sophisticated than proof [burdens] in cases concerned with more

45

traditional torts." Id. at 299 (first quoting Rubanick v. Witco Chem. Corp., 125 N.J. 421, 433 (1991); and then quoting Landrigan v. Celotex Corp., 127 N.J. 404, 413 (1992)).

Courts have recognized that, in cases involving asbestos-exposure that allegedly caused mesothelioma, "the frequency, regularity and proximity test 'is not a rigid test with an absolute threshold level necessary to support a jury verdict.'" Est. of Brust v. ACF Indus., LLC, 443 N.J. Super. 103, 125 (App. Div. 2015) (quoting James, 155 N.J. at 302). Flexibility is required because "[t]he amount of evidence needed to establish the regularity and frequency of exposure will differ from case to case." Kurak, 298 N.J. Super. at 321 (quoting Wehmeier v. UNR Indus., Inc., 572 N.E.2d 320, 337 (Ill. App. Ct. 1991)).

Many courts have acknowledged that mesothelioma can be "caused after only minor exposure to asbestos dust." See ibid. (quoting Wehmeier, 572 N.E.2d at 337); see also, e.g., Brust, 443 N.J. Super. at 126-27 ("[I]t is undisputed that mesothelioma can develop from minimal exposure to asbestos."); Tragarz v. Keene Corp., 980 F.2d 411, 421 (7th Cir. 1992) (applying Illinois law and concluding "that low exposures of asbestos induce and contribute to the development of mesothelioma"); Larson v. Johns-Manville Sales Corp., 399 N.W.2d 1, 4 (Mich. 1986) (recognizing that

46

mesothelioma "appears to develop with only minimal exposure to asbestos"); Holcomb v. Ga. Pac., LLC, 289 P.3d 188, 196 n.9 (Nev. 2012) ("[M]esothelioma is a signature asbestos disease that can be contracted from low doses of asbestos exposure."); Gregg v. V-J Auto Parts, Co., 943 A.2d 216, 225-26 (Pa. 2007) (adopting Tragarz and holding that even minimal exposure to asbestos can cause mesothelioma); Borg-Warner Corp. v. Flores, 232 S.W.3d 765, 771 (Tex. 2007) ("[I]t is generally accepted that one may develop mesothelioma from low levels of asbestos exposure[.]" (quoting David L. Faigman et al., Modern Scientific Evidence: The Law and Science of Expert Testimony § 28:5 at 416 (2007))).

The frequency, regularity, and proximity of exposure to a toxic substance necessary to cause a disease, therefore, will depend on the peculiar characteristics of the toxic substance and the disease induced. Certain substances are much more toxic than others and have a much greater capacity to cause deadly diseases, even if exposure is relatively minimal. For example, "[m]alignant mesothelioma can develop after short-term asbestos exposures of only a few weeks, and from very low levels of exposure. There is no evidence of a threshold level below which there is no risk for mesothelioma." Mazurek, 66 Morbidity & Mortality Wkly. Rep. at 215.

The frequency, regularity, and proximity test is merely an articulation of what constitutes a substantial factor for purposes of determining proximate cause in an occupational exposure setting. See Johnson v. Allis-Chalmers Corp. Prod. Liab. Tr., 11 F. Supp. 3d 1119, 1126 (D. Wyo. 2014) (concluding that "the 'frequency, regularity, and proximity' standard is not a new or different test" from the substantial factor test but one formulation of that test in the asbestos context). When a plaintiff has presented competent and credible evidence that even a minimal "number of asbestos fibers can cause" mesothelioma, then "a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury." Kurak, 298 N.J. Super. at 321 (quoting Wehmeier, 572 N.E.2d at 337).

Here, plaintiff's expert, Dr. Moline, emphasized that even "short exposures to asbestos cause mesothelioma." In addition, Dr. Moline expressed that Edenfield's exposure to Union Carbide's Calidria asbestos was a daily occupational hazard over many years and "[was] significant enough to substantially contribute to his mesothelioma." In the end, it was for the jury to determine whether to accept the expert opinion of Dr. Moline or the opposing opinions of the defense experts.

The trial court here properly tailored the charge to the evidence because neither plaintiff's nor Union Carbide's experts agreed on the level of exposure

48

to Union Carbide's asbestos necessary to cause Edenfield's mesothelioma. See Komlodi v. Picciano, 217 N.J. 387, 409 (2014) ("[T]he trial court must tailor the instructions on the law to the theories and facts of a complex case for a jury to fully understand the task before it." (citing Reynolds v. Gonzalez, 172 N.J. 266, 288-89 (2002))). As earlier noted, the court instructed the jury on the essential features of Sholtis -- that, for medical causation purposes, Edenfield's exposure to Union Carbide's asbestos could not be "a remote or trivial cause having only an insignificant connection" to his contracting mesothelioma, nor could liability be "based on casual or minimal contact with [its] product" or "be imposed on mere guesswork." No incantation of magic "catch words" was necessary to satisfy the substantial factor test. See Sholtis, 238 N.J. Super. at 29.

At the charge conference, the trial court suggested that the Sholtis frequency, regularity, and proximity test was appropriate at the summary judgment stage, but not in instructing the jury. Plaintiff advanced that position in her brief before this Court. We reject the position taken by the trial court and plaintiff that there can be one standard used by the trial court in deciding summary judgment and another standard used in instructing the jury. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 533 (1995) ("[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed

49

verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986))). The substantive law governing the summary judgment motion is the same law that guides the jury in making its ultimate determination.

We conclude that the trial court correctly charged the jury on the core concepts underlying medical causation in this case.

We refer to the Supreme Court Committee on Model Civil Jury Charges for its consideration whether there is a need to modify the Model Charge on proximate cause and substantial factor in the toxic tort setting.

V.

Accordingly, we reverse the judgment of the Appellate Division and reinstate the verdict of the jury. We remand to the trial court to address any remaining issues, consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICE PIERRE-LOUIS join in JUSTICE ALBIN's opinion. JUSTICE SOLOMON joins JUSTICE ALBIN's opinion in part. JUSTICE PATTERSON filed a dissent, which JUSTICE SOLOMON joins in part. JUDGE FUENTES (temporarily assigned) did not participate.

Thomasenia L. Fowler, as Administrator
and Administrator ad Prosequendum of the
Estate of Willis Edenfield,

Plaintiff-Appellant,

v.

Akzo Nobel Chemicals, Inc.
as successor to Imperial Chemical
Industries PLC, and National Starch
and Chemical Co. (Discovery Only),
Corn Products International, Inc.,
as successor to National Starch
and Chemical Co. (Discovery Only),
Henkel Corporation, individually
and as successor-in-interest to
the Adhesive and Electronics
Division of National Standard
Chemical Co. (Discovery Only), and
National Starch, LLC,
individually and as successor to
National Starch and Chemical Co.
(Discovery Only),

Defendants,

and

Union Carbide Corporation,

Defendant-Respondent.

JUSTICE SOLOMON, dissenting in part and concurring in part.

1

This appeal presented the Court with two questions. First, whether the trial court erred in not using the exact language expressed in the Sholtis v. American Cyanamid Co. test when it instructed the jury on medical causation. See 238 N.J. Super. 8, 28-29 (App. Div. 1989). And second, whether a manufacturer may reasonably rely on an employer to convey warnings and instructions to its employees to satisfy the manufacturer's duty to warn.

As to the first issue -- the medical causation charge -- I agree with the majority that a trial court's failure to use the specific language from Sholtis when instructing the jury will not always lead to reversal where the trial court adequately explains the standard to the jury. Accordingly, I join the majority's decision to reverse the Appellate Division on this issue.

As to the second issue -- adequate warnings -- I agree with the dissent that, consistent with this Court's decisions in Coffman v. Keene Corp., 133 N.J. 581, 602-03 (1993), and Theer v. Philip Carey Co., 133 N.J. 610, 622 (1993), a manufacturer could discharge its duty to warn by conveying adequate warnings and information to employers for distribution to employees. Therefore, I join the dissent and would affirm the Appellate Division on this issue.

2

Thomasenia L. Fowler, as Administrator and Administrator ad Prosequendum of the Estate of Willis Edenfield,

Plaintiff-Appellant,

v.

Akzo Nobel Chemicals, Inc. as successor to Imperial Chemical Industries PLC, and National Starch and Chemical Co. (Discovery Only), Corn Products International, Inc., as successor to National Starch and Chemical Co. (Discovery Only), Henkel Corporation, individually and as successor-in-interest to the Adhesive and Electronics Division of National Standard Chemical Co. (Discovery Only), and National Starch, LLC, individually and as successor to National Starch and Chemical Co. (Discovery Only),

Defendants,

and

Union Carbide Corporation,

Defendant-Respondent.

JUSTICE PATTERSON, dissenting.

1

In this asbestos product liability appeal, the Appellate Division held that defendant Union Carbide Corporation was denied a fair trial by virtue of errors in the jury charge, the verdict sheet, and the trial court's response to a jury question.

First, the Appellate Division held that the trial court improperly charged the jury with respect to the two categories of warnings and instructions at issue in this case: the warnings that appeared on Union Carbide's asbestos bags, and the warnings, instructions, and other materials that Union Carbide sent to Willis Edenfield's employers for dissemination to employees. The appellate court concluded that when the trial court charged the jury that Union Carbide could not discharge its duty to warn by conveying adequate warnings and information to the employers for distribution to employees, it ran afoul of this Court's decisions in Coffman v. Keene Corp., 133 N.J. 581, 602-03 (1993), and Theer v. Philip Carey Co., 133 N.J. 610, 622 (1993). The Appellate Division ruled that the trial court compounded that error by directing the jury to consider only the warnings on asbestos bags when it answered the sole question on the verdict sheet about the adequacy of Union Carbide's warnings.

I consider the Appellate Division's decision to be grounded in longstanding and sound jurisprudence addressing asbestos product liability failure-to-warn claims. In my view, the majority replaces the fair and

2

workable failure-to-warn standard for workplace exposure cases set forth in Coffman and Theer with a confusing and unrealistic test that precludes a finding that the manufacturer has met its duty to warn unless warnings on asbestos bags, if feasible, were adequate. Moreover, the majority sanctions the trial court's jury interrogatories and its response to a jury question, which guided the jury to limit its consideration of the adequacy of the warnings to the asbestos bags alone. Yet that guidance contradicted the trial court's own jury charge and conflicts with the majority's formulation of the governing test.

Second, the Appellate Division reaffirmed its holding in Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 28 (App. Div. 1989), and this Court's holding in James v. Bessemer Processing Co., 155 N.J. 279, 304 (1998), that a three-factor standard governs the question of medical causation in cases arising from toxic tort exposures in the workplace. Viewing general causation concepts to be inadequate to guide juries in workplace toxic tort cases, the Appellate Division in Sholtis and this Court in James expressly required plaintiffs in toxic tort cases "to prove 'an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity' to the plaintiff." James, 155 N.J. at 301 (quoting Sholtis, 238 N.J. Super. at 28). Here, the trial court did not charge the jury to apply that test,

3

and the Appellate Division accordingly deemed the trial court's jury instructions to inadequately state the law.

In today's decision, the majority dismisses the "frequency, regularity and proximity" language set forth in Sholtis and James as nothing more than an "incantation of magic 'catch' words" that a trial court is free to ignore. Ante at ___ (slip op. at 49). It defaults to the general proximate cause test without the Sholtis/James refinement of that standard for toxic tort cases, thus altering the plaintiff's burden of proof on the question of medical causation. Ante at ___ (slip op. at 43-48). The majority insists that the general proximate cause standard charged by the trial court and the test adopted in Sholtis and James for workplace exposure cases are somehow one and the same. I view the majority's holding on the core question of causation to contravene our precedent and muddle our law.

Because of the trial court's errors, I conclude that Union Carbide did not receive a fair trial and would affirm the determination of the Appellate Division. I respectfully dissent.

I.

A.

In an asbestos failure-to-warn case, the plaintiff has the burden to prove that

4

> (1) without warnings or adequate warnings, the product was dangerous to the foreseeable user and therefore defective; (2) that the product left the defendant's control in a defective condition (without warnings or adequate warnings); and (3) the lack of warnings or adequate warnings proximately caused an injury to a foreseeable user.
>
> [Whelan v. Armstrong Int'l, Inc., 242 N.J. 311, 333 (2020).][1]

Once proof of knowledge in the industry of a product's harmful effects has been shown, "the plaintiff must show that an adequate warning was not provided." James, 155 N.J. at 298.

The touchstone of that inquiry is whether the manufacturer's conduct was reasonable. "[I]n a failure-to-warn case, the element of reasonableness, which is generally a negligence principle, comes into play in determining whether a manufacturer failed to give a necessary warning or an adequate warning." Whelan, 242 N.J. at 333; see also Feldman v. Lederle Labs., 97 N.J. 429, 451 (1984) ("[O]nce the defendant's knowledge of the defect is imputed, strict liability analysis becomes almost identical to negligence analysis in its focus on the reasonableness of the defendant's conduct."). The jury thus

---

[1] Because this case is an "environmental tort action," it is not governed by N.J.S.A. 2A:58C-4, the failure to warn provision of the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 to -11. See N.J.S.A. 2A:58C-6; Whelan, 242 N.J. at 331.

5

decides whether the plaintiff has met her burden to prove that the manufacturer failed to provide an adequate warning, defined as "one that includes the directions, communications, and information essential to make the use of a product safe." Whelan, 242 N.J. at 332 (quoting Freund v. Cellofilm Props., Inc., 87 N.J. 229, 243 (1981)).

In Coffman, this Court eased the burden on plaintiffs in failure-to-warn product liability cases by adopting a heeding presumption -- "a rebuttable presumption that had a warning been provided by the manufacturer, the plaintiff would have heeded the warning by acting to minimize the risk of injury." 133 N.J. at 591. It also set forth guiding principles for failure-to-warn claims arising from asbestos exposure in the workplace. Id. at 606-09.

The Court recognized in Coffman that warning claims in workplace exposure cases are distinct from warning claims in consumer settings. Ibid.; see also Grier v. Cochran Western Corp., 308 N.J. Super. 308, 317 (App. Div. 1998) (citing Coffman and holding that "[w]hat a manufacturer may be reasonably required to do in order to transmit information to a consumer/user of a product may be quite different from what is required of a manufacturer of a product intended for use by many people over an extended period of time in an industrial environment").

6

The Court reiterated in <u>Coffman</u> that the manufacturer's duty is to "take reasonable steps to ensure that its warning reaches those employees" who use the product in the workplace.  133 N.J. at 606.  The Court recognized that a manufacturer may in certain settings act reasonably when it relies on the employer to convey warnings provided by the manufacturer to employees, noting that

> [r]eliance on supervisors and managers to become apprised of safety hazards and to retransmit these warnings orally to workers "rather than the individual reading of a product warning, is a typical method by which information is disseminated in the modern workplace."  Thus, one must assume, in many situations, that an employer must itself be warned in order to give its employees adequate warnings as part of its more encompassing duty to provide employees with a safe and healthy workplace.
>
> [<u>Id.</u> at 607 (quoting <u>Ferebee v. Chevron Chem. Co.</u>, 736 F.2d 1529, 1539 (D.C. Cir. 1984)).]

The Court stated that "in the employment setting, the adequacy of a warning with respect to unsafe products may require that they be communicated to employers as well as employees; the adequacy of a warning entails alerting the employer in order to alert the employee of the dangers of the unsafe product."  <u>Ibid.</u>

Refuting the defendant's contention that the heeding presumption would "result in asbestos manufacturers being liable for almost any injury caused by

7

a product," id. at 603, the Court commented that its holding in Coffman did not "posit an insuperable burden or . . . impose absolute liability on manufacturers of defective products," id. at 608.  It observed that "in a given case, the defendant may be able to establish that the employer's conduct, not the failure to warn, was the cause in fact of the injuries attributable to the harmful product." Ibid.  The Court stated that "[a]n employer's conduct, in either thwarting effective dissemination of a warning or intentionally preventing employees from heeding a warning, may be a subsequent supervening cause of an employee's injury that will serve to break the chain of causation between manufacturer and employee," and that "[i]f an employer's subsequent course of misconduct is an independent cause of an employee's injury, the absence of a warning itself may have too remote a causal connection to the injury." Ibid. (citing Brown v. U.S. Stove Co., 98 N.J. 155, 171-75 (1984)).  It thus confirmed that a warning claim may fail if the manufacturer provides adequate warnings to the employer, but the employer fails to convey those warnings to employees. Ibid.

The principles stated in Coffman were reiterated in its companion case, Theer, 133 N.J. at 618-24.  There, the Court stressed the manufacturer's "concurrent duty to warn employers, as well as employees" of a product's

8

risks.  Id. at 620-21.  It stated that to satisfy the duty to warn, an asbestos manufacturer could present evidence of

> the adequacy of the warnings that were given, whether they were directed to employers, whether they were calculated to reach and inform employees who would foreseeably be exposed to those products in the workplace, and whether the employer would have required or allowed employees to take precautionary measures to overcome the risks of exposure to asbestos.
>
> [Id. at 622.]

The Court thus recognized in Coffman and Theer that an asbestos manufacturer has a duty to warn employers as well as employees, and that it may in certain circumstances satisfy that duty by taking reasonable steps to convey warnings, instructions, and other information to employers for dissemination to employees.  Coffman, 133 N.J. at 606-09; Theer, 133 N.J. at 622.

The drafters of the Restatement (Third) of Torts:  Products Liability similarly acknowledged that products intended for an industrial workplace present issues not raised by consumer products, and endorsed the imposition of a flexible reasonableness standard on the manufacturer's conduct.  Section 2(c) of that Restatement provides that a product

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the

9

seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

As the Restatement commentary observed, "[c]ommercial product sellers must provide reasonable instructions and warnings about risks of injury posed by products." Id. at cmt. i. "Depending on the circumstances, Subsection (c) may require that instructions and warnings be given not only to purchasers, users, and consumers, but also to others who a reasonable seller should know will be in a position to reduce or avoid the risk of harm." Ibid. The commentary noted that

> [t]here is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to relay warnings. The standard is one of reasonableness in the circumstances. Among the factors to be considered are the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user. Thus, when the purchaser of machinery is the owner of a workplace who provides the machinery to employees for their use, and there is reason to doubt that the employer will pass warnings on to employees, the seller is required to reach the employees directly with necessary instructions and warnings if doing so is reasonably feasible.
>
> [Ibid.]

10

The standard set forth in Coffman, Theer, and the Restatement by no means minimized the importance of adequate warnings on asbestos packaging when it was reasonably feasible to provide such warnings; indeed, it emphasized the importance of direct communication with the employee if such a step is reasonable under the circumstances, as well as the importance of warnings and information provided to the employer. Coffman, 133 N.J. at 606-09; Theer, 133 N.J. at 621-22; Third Restatement § 2(c), cmt. i. That standard, however, allowed for circumstances in which a manufacturer satisfies its duty to adequately warn by communicating warnings and other health and safety information to the employer. Coffman, 133 N.J. at 607; Theer, 133 N.J. at 622; Third Restatement § 2(c), cmt. i. It thus incentivized manufacturers to send into the workplace detailed information on the product's dangers, instructions, and training materials designed to reduce the risk. At trial, it would be the jury's task to determine whether the manufacturer acted reasonably in light of the circumstances of the specific case.

## B.

The majority maintains that its holding follows Coffman and Theer. Ante at ___ (slip op. at 32-34).[2] To the contrary, the majority opinion is at

_____

[2] The majority omits from its opinion language from the Coffman and Theer opinions that is central to this appeal. See ante at ___ (slip op. at 32-34/). It

11

odds with those decisions.  <u>Compare</u> <u>ante</u> at ___ (slip op. at 4-5; 31-34; 37-39; 42-43), <u>with</u> <u>Coffman</u>, 133 N.J. at 606-09, <u>and</u> <u>Theer</u>, 133 N.J. at 622.  The majority has changed the law, and it should say so.

In my view, the majority replaces our existing jurisprudence with a framework that invites confusion.  On the one hand, the majority imposes a duty to place "adequate warnings on the product itself, when feasible," as well as to provide warnings to the employer.  <u>Ante</u> at ___ (slip op. at 33).  In that regard, the majority recognizes that if it was impractical to provide the information necessary to adequately warn on asbestos packaging, then the manufacturer could meet its burden to adequately warn through alternative means.  <u>Ibid.</u>  On the other hand, the majority holds that "an asbestos manufacturer or supplier that places inadequate warnings on asbestos bags

---

makes no mention, for example, of the Court's statement in <u>Coffman</u> that "the adequacy of a warning entails alerting the employer in order to alert the employee of the dangers of the unsafe product," 133 N.J. at 607; the Court's recognition in <u>Coffman</u> that in a "modern workplace," manufacturers typically rely on supervisors and managers to retransmit warnings to employees, <u>ibid.</u>; and the Court's holding in <u>Coffman</u> that if an employer fails to convey such warnings to employees, that failure may break the chain of causation in a failure to warn case and preclude the imposition of liability, <u>id.</u> at 608-09.  Similarly, the majority omits from its discussion of <u>Theer</u> the Court's holding that an asbestos manufacturer seeking to demonstrate the adequacy of its warnings can present evidence relating "to the adequacy of the warnings that were given," whether those warnings were "directed to employers," or whether those warnings were "calculated to reach and inform employees."  133 N.J. at 622.

12

used in the workplace has breached its duty to the worker, regardless of whether it provides the employer with the correct information, which is reasonably intended to reach its employees." Ante at ___ (slip op. at 4). That language suggests that even if the employer takes reasonable steps to provide the employer with adequate warnings that are reasonably intended to reach the employees, it has breached its duty to warn unless adequate warnings appear on asbestos bags. Under that formulation, the manufacturer would be liable for failure to warn even if it was impractical to explain the dangers on a bag and even if employees worked with asbestos that was no longer contained in the packaging in which it was shipped. The majority denies that it adopts a "one-size-fits-all" approach, ante at ___ (slip op. at 40), but that is precisely what it does.

The majority's contradictory language is at odds with the principle articulated by this Court that in the complex field of product liability, "statements delimiting the duty owed by a party in a strict-liability failure-to-warn case involving complex issues of causation, proof, and preemption should, in the interests of justice, be unmistakably clear." Feldman, 132 N.J. at 345-46. Moreover, the majority's standard retroactively devalues the efforts that some asbestos manufacturers have made, by sending information to employers for distribution to employees, to ensure that employees were

13

properly warned, educated, and trained to minimize the risks of asbestos products.

In my view, the majority prescribes an unwarranted departure from Coffman and Theer and leaves the governing standard for asbestos litigation failure to warn claims unclear and unfair.

C.

The majority approves the failure-to-warn questions on the trial court's verdict sheet and its guidance to the jury in response to the jury's question, which are not even consistent with the new standard prescribed in today's decision.

As the majority notes, ante at ___ (slip op. at 9-14), the trial court admitted substantial evidence regarding the warnings that appeared on asbestos bags, as well as Union Carbide's provision of Material Safety Data Sheets (MSDSs), pamphlets, standards promulgated by the federal Occupational Safety and Health Administration (OSHA), training materials, and other health and safety documents to the entities that operated Edenfield's workplace.

In the charge conference, Union Carbide requested that the trial court charge the jury that,

> [f]or purposes of deciding whether the warning given was adequate, you may consider as part of the warning the cautionary information given to employer with the intention or purpose that the employer alert employees

14

to the dangers of the product and the proper methods of mitigating the risks presented by the product.

The trial court declined that request. It charged the jury:

> In the employment context, a manufacturer or supplier of products that are used by employees is required to take reasonable steps to ensure that its warning reaches those employees. Satisfying that obligation may require that warnings be communicated to employers as well as employees.
>
> In this case there has been evidence of warnings provided both on labels on Union Carbide's asbestos as well as warnings and information provided to Mr. Edenfield's employers. In determining whether Union Carbide satisfied its duty to warn, you may consider both of these avenues of warning.
>
> The duty to put an adequate warning on the product may not be discharged by warnings and information to the employer.

Over Union Carbide's objection, the verdict sheet required the jury to answer the following questions:

> 3.a. Has Plaintiff proven by a preponderance of the credible evidence that Defendant Union Carbide failed to provide an adequate warning or instruction on its product rendering it not reasonably safe for its intended and foreseeable use?
>
> YES ____ NO ____ VOTE ____
>
> 3.b. Has Plaintiff proven by a preponderance of the credible evidence that Defendant Union Carbide failed to take reasonable steps to ensure that its warnings reached Mr. Edenfield?

15

YES \_\_\_\_  NO \_\_\_\_  VOTE \_\_\_\_

Question 3.a. was the only question on the verdict sheet that addressed the adequacy of Union Carbide's warnings. It thus provided the jury with its sole opportunity to consider both categories of Union Carbide's warnings: the warnings on its asbestos bags and the warnings, instructions, MSDSs, pamphlets, OSHA standards, training materials, and other information that Union Carbide provided to Edenfield's employers.

During deliberations, the jury inquired as follows: "On question 3A is adequate warnings/instructions only to the labels on the asbestos bags or does it include other materials, that is to say M.S.D.S. and pamphlets[?]"

The trial court declined Union Carbide's request that the jury be instructed to refer to the trial court's jury charge, which had addressed the relevance of warnings and instructions that Union Carbide had given the employers. Instead, the trial court told the jury, "the answer to that question is that it deals with the asbestos bags as to question 3A. Thank you." The jury was thus instructed not to consider the warnings, MSDSs, pamphlets, OSHA standards, training materials, and other information that Union Carbide had provided to Edenfield's employers when it determined whether plaintiff met her burden to prove that Union Carbide's warnings were inadequate.

16

I share the Appellate Division's view that the adequacy-of-the-warning portion of the verdict sheet misled the jury on a crucial question, warranting a new trial. See Wade v. Kessler Inst., 172 N.J. 327, 341 (2002) (holding that erroneous questions on a verdict sheet warranted reversal of the trial court's judgment and a new trial); Sons of Thunder v. Borden, Inc., 148 N.J. 396, 418 (1997) (holding that erroneous jury interrogatories may require reversal if "they were misleading, confusing, or ambiguous"). I also concur with the Appellate Division that the trial court's response to the jury question compounded that error. See Fayer v. Keene Corp., 311 N.J. Super. 200, 207 (App. Div. 1998) (ordering a new trial in an asbestos product liability case because the trial court's response to a jury question misled the jury as to the determination that it was required to make); State v. Conway, 193 N.J. Super. 133, 157 (App. Div. 1984) (holding that "[w]hen a jury requests clarification" during its deliberations, "the trial judge is obligated to clear the confusion").

Here, the jury was clearly directed not to consider Union Carbide's warnings and instructions that were sent to the employer to inform Edenfield and other employees when it decided whether Union Carbide's warnings were adequate. Those instructions were clearly contrary to the trial court's jury charge and the standard adopted by the majority. I respectfully submit that

even under the majority's reformulation of the law, that instruction constituted reversible error.

In sum, I agree with the Appellate Division that Union Carbide was denied a fair trial by virtue of the jury charge, the verdict sheet, and the trial court's response to the jury's question on the failure to warn issue. I would grant a new trial on that basis alone.

## II.

## A.

I also agree with the Appellate Division that the trial court improperly declined to charge the jury on the question of medical causation in accordance with the "frequency, regularity and proximity" test of <u>Sholtis</u>, 238 N.J. Super. at 30-31, and <u>James</u>, 155 N.J. at 299-301. I part company with the majority's conclusion that the general standard for proximate cause is an acceptable substitute for the <u>Sholtis</u> and <u>James</u> standard in workplace exposure cases, and that it is immaterial that the jury in this case was not charged to apply the factors identified in <u>Sholtis</u> and <u>James</u>. <u>See</u> <u>ante</u> at ___ (slip op. at 43-50).

To the contrary, the "frequency, regularity and proximity" test of <u>Sholtis</u> and <u>James</u> was adopted because this Court and the Appellate Division recognized the need for a proximate cause charge that addressed the special considerations present in a workplace exposure case.

18

Reversing the trial court's grant of summary judgment to defendants in an asbestos case, the Appellate Division in <u>Sholtis</u> addressed the appropriate standard for determining whether workplace exposure to a particular product was a proximate cause of the plaintiff's injury. 238 N.J. Super. at 25-31. The court reasoned that for a defendant to be held liable, "[t]he contact between a plaintiff and the defective product must be sufficiently significant so that a reasonable jury could determine that the product was a substantial factor in bringing about the plaintiff's injury." <u>Id.</u> at 21.

The Appellate Division accordingly introduced to our law a requirement previously imposed by the United States Court of Appeals for the Fourth Circuit and other federal courts -- that "a plaintiff prove an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity; and that such factors should be balanced for a jury to find liability." <u>Id.</u> at 28-29 (citing <u>Lohrmann v. Pittsburgh Corning Corp.</u>, 782 F.2d 1156, 1162-63 (4th Cir. 1986)). The Appellate Division in <u>Sholtis</u> considered the "frequency, regularity and proximity" test to be "well-reasoned, properly focusing upon the cumulative effects of the exposure," and to represent "a fair balance between the needs of plaintiffs (recognizing the difficulty of proving contact) and defendants (protecting against liability predicated on guesswork)." <u>Id.</u> at 29.

19

In <u>James</u>, this Court noted that "[i]n toxic tort cases, the task of proving causation is invariably made more complex because of the long latency period of illnesses caused by carcinogens or other toxic chemicals." <u>James</u>, 155 N.J. at 300 (quoting <u>Ayers v. Jackson Township</u>, 106 N.J. 557, 585 (1987)). It stated that "the burden of proving that the plaintiff's exposure to the products of any single defendant was a 'substantial factor' causing or exacerbating the plaintiff's illness is a formidable one." <u>Id.</u> at 301. Noting federal courts' broad acceptance of the "frequency, regularity and proximity" test adopted by the Appellate Division in <u>Sholtis</u>, this Court held in <u>James</u> "that a plaintiff in an occupational-exposure, toxic tort case may demonstrate medical causation by establishing: (1) factual proof of the plaintiff's frequent, regular and proximate exposure to a defendant's products; and (2) medical and/or scientific proof of a nexus between the exposure and the plaintiff's condition." <u>Id.</u> at 304.

The Court stressed in <u>James</u> that the standard "is not a rigid test with an absolute threshold level necessary to support a jury verdict." <u>Id.</u> at 302 (quoting <u>Slaughter v. S. Talc Co.</u>, 949 F.2d 167, 171 & n.3 (5th Cir. 1991)). Under the standard, however, a "plaintiff cannot rest on evidence which merely demonstrates that a defendant's asbestos product was present in the workplace or that he had 'casual or minimal exposure' to it." <u>Kurak v. A.P.</u>

20

Green Refractories Co., 298 N.J. Super. 304, 314 (App. Div. 1997) (quoting

Goss v. Am. Cyanamid Co., 278 N.J. Super. 227, 236 (App. Div. 1994)).

In the wake of Sholtis and James, "New Jersey courts, as well as courts in a majority of other jurisdictions, look to the 'frequency, regularity and proximity' of exposure as pronounced in Sholtis." Est. of Brust v. ACF Indus., LLC, 443 N.J. Super. 103, 125 (App. Div. 2015) (citing James, 155 N.J. at 302-04; Sholtis, 238 N.J. at 28). Indeed, this Court recently reaffirmed the standard of Sholtis and James, observing that:

> [f]or medical causation, the plaintiff must show that the injury was "proximately caused by exposure to defendant's asbestos product," [Coffman, 133 N.J. at 594], that is, "the exposure [to each defendant's product] was a substantial factor in causing or exacerbating the disease," James, 155 N.J. at 299 (alteration in original) (quoting Sholtis, 238 N.J. Super. at 30-31). Medical causation requires proof of "'an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity' to the plaintiff." Id. at 301 (quoting Sholtis, 238 N.J. Super. at 28).
>
> [Whelan, 242 N.J. at 333-34.]

In short, the standard of Sholtis and James has clearly defined the core inquiry on medical causation issues in toxic tort cases for more than thirty years. Ibid.

21

B.

In this case, Union Carbide requested a jury charge that precisely tracked the language of Sholtis and James:

> [I]n order to prove medical causation, the Plaintiff must prove that Mr. Edenfield was exposed to the Defendant's product with sufficient frequency, with a regularity of contact, and with the product in close enough proximity to show that the exposure to Defendant's product was a substantial contributing factor to Mr. Edenfield's mesothelioma. If you find that Mr. Edenfield was not exposed at all to a Defendant's asbestos products, or that the level of exposure to that Defendant's product was casual or minimal, then you must find for that Defendant.

The trial court declined Union Carbide's request for that instruction. The court told counsel that it had never given such a charge, that it relied instead on the substantial factor test, and that it considered Sholtis and James to provide only "the summary judgment standard," not the standard for a jury determination. Instead of directing the jury to apply the "frequency, regularity and proximity" test of Sholtis and James, the trial court gave the jury a generic medical causation charge devoid of any reference to the frequency, regularity or proximity of Edenfield's contact with Union Carbide's products:

> Under the second requirement of proximate cause, Plaintiff must prove that Mr. Edenfield's exposure to Union Carbide's asbestos was a proximate cause of his mesothelioma. This is called the medical causation portion of the proximate cause element.

22

By proximate cause it is meant that the failure to warn was a substantial factor which singly, or in combination with another cause, brought about the injury. "Substantial" means that a product was an efficient cause of the Plaintiff's injury, and that it was not a remote or trivial cause having only an insignificant connection with the harm. Liability should not attach based on casual or minimal contact with the product. Liability should not be imposed on mere guesswork. The fact that there may have been other independent or contributing causes does not mean that there cannot be a finding of proximate cause. Nor is it necessary for the failure to warn to be the sole cause of Mr. Edenfield's injury.

It is not necessary for an exposure to be the sole or even the dominant cause of Mr. Edenfield's disease in order to be considered a proximate cause. There can be more than one proximate cause of an injury or disease, and there can be many substantial factors in causing a disease or death.

The word "substantial" refers not to quantity but to quality. The fact that there may have been other independent or contributing causes does not necessarily relieve Union Carbide from liability.

Thus instructed, the jury received no direction to consider the three factors that this Court has repeatedly stated are crucial to the question of medical causation. As the Appellate Division properly recognized, the charge substantially eased plaintiff's burden of proof and allowed the jury to decide a core issue without considering the relevant factors.

23

C.

The majority concedes that the trial court erred when it ruled that the Sholtis and James test applies only to summary judgment, not to a jury's determination of medical causation at trial. Ante at ___ (slip op. at 49-50) ("[W]e reject the position taken by the trial court and plaintiff that there can be one standard used by the trial court in deciding summary judgment and another standard used in instructing the jury."). As the majority acknowledges, the substantive standard applied in a summary judgment motion is, by definition, the same standard that would apply to the jury's determination if the case were to be tried. Ante at ___ (slip op. at 49); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 533 (1995) (holding that "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986))).

Notwithstanding its rejection of the trial court's rationale for omitting the standard of Sholtis and James from its jury charge, however, the majority nonetheless endorses the trial court's generic causation charge. Ante at ___ (slip op. at 48-49). It insists that the trial court "instructed the jury on the essential features of Sholtis," ante at ___ (slip op. at 49), despite the trial

24

court's undisputed omission of all three of the medical causation factors prescribed in that decision, see Sholtis, 238 N.J. Super. at 28-29. The majority dismisses the three-factor test of Sholtis and James as "merely an articulation of what constitutes a substantial factor for proximate cause purposes in an occupational exposure setting," ante at ___ (slip op. at 48), as if that standard represented nothing more than an exercise in semantics. To the surprise, no doubt, of courts and counsel who have long viewed this Court's chosen terms to state the governing law, the majority pronounces that "[n]o incantation of magic 'catch' words was necessary to satisfy the substantial factor test." Ante at ___ (slip op. at 49).

When this Court announces a substantive standard such as the "frequency, regularity and proximity" medical causation test of Sholtis and James, the factors it identifies and the language it uses are integral to its holding. Jury charges on the issue addressed by the Court should accurately reflect the governing standard. See Wade, 172 N.J. at 341 ("[J]ury charges must outline the function of the jury, set forth the issues, correctly state the applicable law, and plainly spell out how the jury should apply the legal principles to the facts as it may find them[.]" (second alteration in original) (quoting Velazquez v. Portadin, 163 N.J. 677, 688 (2000))). Today's decision

25

sends the message that a trial court need not charge a jury in accordance with a standard that this Court prescribes if it prefers a different test.

I do not view the majority's after-the-fact justification for the trial court's error to advance our jurisprudence in this important area of the law. I concur with the Appellate Division's conclusion that the trial court's medical causation charge denied Union Carbide a fair trial.

## III.

I would affirm the Appellate Division's determination. I respectfully dissent.